**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CORNERSTONE STAFFING SOLUTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> WEBER, SHAPIRO & COMPANY, LLP and SCOTT SHAPIRO, <br><br> Defendants. | Civil Action No: 18-3441-SDW-CLW <br><br> **OPINION** <br><br><br> November 26, 2019 |

**WIGENTON**, District Judge.

Before this Court is Defendants Weber, Shapiro & Company, LLP and Scott Shapiro's[1] (collectively, "Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendants' Motion for Summary Judgment is **GRANTED**.

### I. BACKGROUND AND PROCEDURAL HISTORY

In December 2015, Cornerstone Staffing Solutions, Inc. ("Cornerstone" or "Plaintiff"), a California corporation, agreed to purchase certain business assets[2] from non-parties Valtech

---

[1] Mr. Shapiro is a certified public accountant who "provides accounting services to [Valtech] through his accounting firm," Weber, Shapiro & Company, LLP. (D.E. 1 ¶ 6.)

[2] The assets were a "legacy IT staffing business." (D.E. 1 ¶ 10-11.)

1

Services, Inc. and Valtech Solutions, Inc. (collectively, "Valtech")[3] for $1.9 million. (D.E. 1 ¶¶ 1, 9-13, 22.) The terms of the purchase were set out in an Asset Purchase Agreement ("APA"), and included a term obligating Cornerstone to pay an Initial Payment Adjustment ("IPA") if "the 2015 EBITDA"[4] for the purchased assets "exceeded a contractually defined target based on audited financial statements." (*Id.* ¶¶ 1-2, 20-22.)

Defendants "served as Valtech's accountants during the APA transaction." (*Id.* ¶¶ 1-2.) Plaintiff alleges that Defendants prepared "false and misleading income statements" that: 1) "induced Cornerstone to overpay for the [a]ssets Cornerstone acquired in the APA transaction," and 2) formed the basis of a "materially false and misleading IPA demand" of $1,791,524.00. (*Id.* ¶¶ 1-2, 14-32.) Plaintiff further alleges that Defendants "actively participated in Valtech's wrongful withholding of hundreds of thousands of dollars in customer payments that are owed to Cornerstone under the APA." (*Id.* ¶¶ 3, 34-42.)[5] More specifically, Plaintiff alleges that Defendants:

- "overstated revenue, understated expenses" and created a "flawed IPA calculation," (*id.* ¶ 2);
- improperly accounted for "intercompany business operations" expenses ("ICBOs"), (*id* ¶ 15);

---

[3] Both entities are subsidiaries of Valtech S.E. (D.E. 1 ¶ 9-11.)

[4] "EBITDA" is an acronym for "Earnings Before Interest, Tax, Depreciation, and Amortization."

[5] The Complaint briefly notes that the false income statements and "the flawed IPA calculation" form the basis of a separate suit brought by Valtech against Cornerstone in "litigation pending in Dallas County, Texas." (D.E. 1 ¶ 2.) In their moving brief, Defendants claim that the jury returned a verdict in that matter favorable to Defendants, but have not moved for summary judgment on preclusion grounds. (D.E. 26-8 at 1 n.1.)

- failed to provide Plaintiff with internal financial documents created for Valtech, (*id.* ¶ 16)[6];

- engaged in "questionable accounting practices," regarding expenditures for monthly costs for "office supplies, conferencing, postage, dues and subscriptions, telecommunications, and software licenses and support," (*id.* ¶ 29);

- provided an insufficiently detailed "AR roll forward" report that was based on "gross accounting errors," (*id.* ¶¶ 31-32).

On March 12, 2018, Plaintiff filed a five-count Complaint against Defendants in this Court for fraud, fraudulent inducement, negligent misrepresentation, conspiracy, and professional negligence.[7] (D.E. 1.) Defendants answered on April 17, 2018. (D.E. 5.) On July 17, 2019, Defendants filed the instant motion for summary judgment, and all briefs were timely filed. (D.E. 26-8, 30, 33.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)

---

[6] What Plaintiff refers to as "Valtech's 'real books.'" (D.E. 1 ¶ 16.)

[7] Plaintiff does not oppose summary judgment as to its claim for professional negligence (Count Five) (mislabeled as Count Four). (D.E. 30 at 5 n.2.) Count Six, (mislabeled as Count Five), is not a substantive claim, but rather seeks declaratory judgment barring Defendants "from seeking or receiving indemnity from [Valtech] for the harm caused to [Plaintiff] by the wrongful conduct alleged . . . ." (D.E. 1 ¶¶ 73-75.) Plaintiff's opposition brief does not address Defendant's motion for summary judgment as to Count Six, therefore, this Court deems the motion unopposed as to that count. As a result, only Plaintiff's claims for fraud, fraudulent inducement, negligent misrepresentation, and conspiracy remain.

3

(emphasis in original). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party

4

is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

III. DISCUSSION

Defendants argue the state tort claims against them must be dismissed because Plaintiff did not comply with New Jersey's affidavit of merit statute ("AOM statute"), N.J. STAT. ANN. § 2A:53A–26, *et seq*. The AOM Statute "provides that an affidavit of merit is required in actions seeking 'damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation.'" *Nuveen Mun. Tr. v. Withsumsmith Brown P.C.*, 752 F.3d 600, 603 (3d Cir. 2014) (citing N.J. STAT. ANN. § 2A:53A-27). The affidavit, which must be filed within 60 days of the date the defendant files their answer,[8] must be prepared by an appropriately licensed person and establish that there exists a "reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." N.J. STAT. ANN. § 2A:53A–27. The purpose of the Statute "is to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily [can] be identified at an early state of litigation." *Couri v. Gardner*, 801 A.2d 1134, 1137 (N.J. 2002); *Meehan v. Antonellis*, 141 A.3d 1162, 1169 (N.J. 2016).

---

[8] Upon a finding of good cause, this deadline may be extended no more than once for a period "not to exceed 60 days." N.J. Stat. Ann. 2A:53A-27. Plaintiff was granted such an extension on June 5, 2018. (D.E. 11.)

5

To determine whether the AOM Statute applies to a particular claim, a court must consider: "(1) whether the action is for 'damages for personal injuries, wrongful death or property damage' (nature of injury); (2) whether the action is for 'malpractice or negligence' (cause of action); and (3) whether the 'care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint [] fell outside acceptable professional or occupational standards or treatment practices.'" *Couri*, 801 A.2d at 1137 (alteration in original, internal citations omitted); *see also Mendoza v. Inspira Med. Ctr. Vineland*, Civ. No. 16-1337, 2019 WL 5304129, at *5–6 (D.N.J. Oct. 17, 2019). There being no dispute as to the first and third elements, this Court focuses solely on the second – whether Plaintiff's causes of action are for malpractice or negligence.

Although Plaintiff's remaining claims are ostensibly for fraud, fraudulent inducement, and negligent misrepresentation,[9] "an action need not be styled as one for malpractice or negligence for the AOM statute to apply." *Nuveen*, 752 F.3d at 605. "It is not the label placed on the action that is pivotal but the nature of the legal inquiry. Accordingly, when presented with a tort or contract claim asserted against a professional specified in the statute, rather than focusing on whether the claim is denominated as tort or contract, attorneys and courts should determine if the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession. If such proof is required, an affidavit of merit is required for that claim, unless some exception applies." *Couri*, 801 A.2d at 1141; *see also Nuveen*, 752 F.3d at 605. A failure to submit an appropriate affidavit ordinarily requires dismissal of plaintiff's claims. *See Meehan*, 141 A.3d at 1169 (noting that '[t]he submission of an

---

[9] Plaintiff's conspiracy claim rises and falls on the success of its substantive claims. As discussed below, because summary judgment is appropriate as to Plaintiff's intentional tort claims, it is also appropriate as to Plaintiff's conspiracy claim.

appropriate affidavit of merit is considered an element of the claim. Failure to submit an appropriate affidavit ordinarily requires dismissal of the complaint with prejudice").

Here, although Plaintiff styles its remaining claims as intentional torts, in order to prove those claims Plaintiff must prove that Defendants deviated from professional standards of care. *See Nuveen*, 752 at 606 (noting that the court must look to the allegations as pled in the complaint when determining the nature of the claims brought). For example, any determination regarding whether Defendants improperly accounted for expenses, (*see* D.E. 1 ¶¶ 2, 15, 29), requires an understanding of how accountants should treat expenses. Before reaching a finding as to the propriety of Defendants' alleged decision to withhold certain documents it created for Valtech, (*see id.* ¶ 16), a fact finder must first understand what documents a professional accountant would provide to a non-client engaged in an asset purchase. To ascertain whether Defendants engaged in "gross accounting errors" when preparing an AR roll forward report, (*see id.* ¶¶ 31-32), one must first understand what standards accounting professionals adhere to in preparing those reports. As a result, Plaintiff's claims at their core require an affidavit of merit.[10] Because Plaintiff failed to provide such an affidavit within the time permitted, summary judgment is appropriate as to its claims.

Plaintiff argues that, even if this Court finds it has failed to comply with the statute, it is excused from doing so by the "common knowledge" exception. The "common knowledge exception" applies "where jurors' common knowledge as lay persons is sufficient to enable them, using 'ordinary understanding and experience,' to determine a defendant's negligence without the

---

[10] Plaintiff's argument that its claims do not involve professional standards of care because the Complaint does not specifically allege that "Defendants failed to comply with GAAS, GAAP, or any other professional standard related to Defendant's activities" is unavailing (D.E. 30 at 21.) The law does not require the invocation of specific guidelines or published standards to trigger the AOM Statute. Rather, a court must focus on whether the claims allege "deviation from a professional standard devoid of any claim label." *Nuveen*, 752 3d. at 606.

benefit of the specialized knowledge of experts." *Md. Cas. Co. v. Johnson Servs., LLC*, 61 F. Supp. 3d 461, 465 (D.N.J. 2014). Given the complexity of accounting principles in general, and the technical detail involved in corporate transactions, including the calculation of EBITDA and the preparation of financial statements, the average juror would not possess the "ordinary understanding and experience" to evaluate Defendants' conduct without expert assistance. As such, this Court is unpersuaded that the common knowledge exception applies.[11]

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED**. An appropriate order follows.

                                                           ___/s/ Susan D. Wigenton_____
                                                           **SUSAN D. WIGENTON, U.S.D.J.**

Orig:         Clerk
cc:           Cathy L. Waldor, U.S.M.J.
                  Parties

---

[11] This Court is equally unpersuaded by Plaintiff's argument that Defendants are equitably estopped from seeking summary judgment because Defendants failed to raise the AOM Statute in its prior motion to dismiss and waited eleven months after the AOM Statute deadline had passed before moving for summary judgment. (*See* D.E. 30 at 23-25.) Plaintiffs contend that in this context, both the doctrine of laches and equitable estoppel bar Defendants' motion. (*Id.*) Laches, an "equitable defense that may operate as estoppel against the assertion of a right" applies when "(i) one party causes an unreasonable delay in asserting its right, and (ii) the other party suffers prejudice as a result of said delay." *U.S. ex rel. Raff Elec., Inc. v. Great Am. Ins. Co.*, Civ. No. 05-2629, 2007 WL 1959271, at *1 (D.N.J. July 5, 2007) (citing *In re Mushroom Transp. Co., Inc.,* 382 F.3d 325, 337 (3d Cir.2004)). Similarly, equitable estoppel may relieve a party of its failure to adhere to the clear requirement of the AOM Statute where a defendant "engaged in conduct, either intentionally or under circumstances that induced reliance" and which caused a plaintiff to "act[] or change[] their position to their detriment." *Knorr v. Smeal*, 836 A.2d 794, 799 (N.J. 2003). However, Plaintiff knew it was obligated to submit an affidavit of merit, at the very least as to the count for professional negligence, and willingly chose not to do so, despite the Court's entry of an Order extending Plaintiff's time to file an affidavit of merit for sixty days. (D.E. 11.) In addition, in the eleven-month period between that deadline and the date Defendants filed the instant motion, only limited paper discovery has been exchanged and no depositions have been taken. The delay has not prejudiced Plaintiffs in any meaningful way. Therefore, neither laches nor equitable estoppel preclude Defendants' motion.